**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY BUSEY, | : | |
| Plaintiff | : | 1:12-cv-469 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| OFFICER SMITH, *et al.*, | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

### April 15, 2014

## I.   BACKGROUND

On March 15, 2012, Plaintiff, Anthony Busey, filed a *pro se* civil rights

action pursuant to 42 U.S.C. § 1983 naming as Defendants employees of the

Pennsylvania Department of Corrections ("DOC").  (Doc. 1).  The Complaint

alleges constitutional violations for events that occurred while Plaintiff was

incarcerated at the State Correctional Institution ("SCI") at Camp Hill,

Pennsylvania.[1]  (Doc. 1 ¶¶ 4-7).  A motion to dismiss was previously filed by

Hearing Examiner K.P. Reisinger.  (Doc. 14).  Plaintiff was ordered to respond to

the motion, however he failed to do so.  (Doc. 20).  By Order dated January 30,

2013, this Court adopted the Magistrate Judge's Report, (Doc. 32), which

recommended that the motion to dismiss be granted and that Hearing Examiner

---

[1]  Plaintiff is currently incarcerated at the State Correctional Institution at Forest, in
Marienville, Pennsylvania.

Reisinger be dismissed as a defendant to this action.  (Doc. 33).  The remaining

Defendants are Corrections Officers Brian Smith and A. Anstead.  (*Id.*).

On November 22, 2013, Defendants filed the instant motion for summary

judgment, supporting brief, statement of material facts, and exhibits.  (Docs. 45-

48).  By Order dated February 4, 2014, Plaintiff was directed to file a brief in

opposition to the motion for summary judgment and a responsive statement of

material facts.  (Doc. 52).  The Order also warned Plaintiff that "failure to file his

opposition as directed within the required time will result in Defendants' Motion

being deemed unopposed and addressed on the merits."  (Doc. 52).  Plaintiff failed

to respond to this motion for summary judgment.  Accordingly, the motion will be

deemed ripe for disposition and, for the reasons set forth below, will be granted.

## II.    STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340

(3d Cir. 1990).  "[T]his standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 U.S. Dist. LEXIS 21277, *5-6 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

## III.   UNDISPUTED FACTS

Rule 56 of the Federal Rules of Civil Procedure provides: "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2). Similarly, Middle District of Pennsylvania Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1.

Plaintiff has failed to file a brief in opposition to Defendants' motion for summary judgment or a responsive statement of facts; therefore, Defendants' statement of facts, which are supported by affidavits, will be deemed admitted. The undisputed facts, taken from Defendants' statement of material facts, (Doc.47), are as follows.

The incident at issue occurred on December 22, 2011.  (SOF ¶ 3). Approximately one week prior to the incident, Plaintiff received a misconduct for refusing to return his meal tray and he was placed on a razor restriction as a result. (SOF ¶ 5).  The razor restriction was for seven (7) days and Plaintiff believed that the restriction ended on December 22, 2011, at 12:00 p.m.  (SOF ¶ 6).  Plaintiff therefore requested a razor after 12:00 p.m. on that day, however Defendant Smith refused to give him one and an argument ensued.  (SOF ¶¶ 7-8).  Defendant Smith verbally harassed Plaintiff by calling him a vulgar name.  (SOF ¶¶ 3, 9).  In response, Plaintiff threatened Defendant Smith stating, "[i]f the door was open, you wouldn't say that."  (SOF ¶ 10) (citing Doc. 48, Ex. A, Deposition of Plaintiff, p. 21, 1.7).  Plaintiff admitted that such words constituted a threat and that it was against prison policy to threaten an Officer.  (SOF ¶¶ 11).  Plaintiff never filed a grievance regarding Defendant Smith's alleged verbal harassment.  (SOF ¶ 4).

Shortly thereafter, Officers went to Plaintiff's cell to assist a nurse in weighing him. (SOF ¶ 12). The entire incident was captured on video. (*Id.*). When Plaintiff stepped out of his cell to be weighed, he believed the Officers were going to do "something", though Defendant Smith never took any aggressive action towards Plaintiff, which was confirmed by video. (SOF ¶¶ 13-15) (citing Doc. 48, Ex. A, Deposition of Plaintiff, p. 22, 1.8-12; p. 23, 1.6-11). When Plaintiff stepped off the scale, he "flinched", which was actually a kick by Plaintiff towards Defendant Smith. (SOF ¶¶ 16-17). Plaintiff admitted that he picked up his left leg as if to kick Defendant Smith. (SOF ¶ 18). Defendant Smith grabbed Plaintiff's left leg and Officer Hoffman took Plaintiff to the ground. (SOF ¶ 19). Plaintiff suffered from a swollen knee after the incident which was caused by Officer Hoffman, not by the Defendants named in this action. (SOF ¶ 28).

In his deposition, Plaintiff admitted he could understand why Defendant Smith thought Plaintiff was going to kick him, why the Officers took him to the ground, and why the Officers would perceive a threat of harm. (SOF ¶¶ 20-22). Plaintiff thereafter received two (2) misconducts relating to this incident, one for attempting to kick Defendant Smith, and one for refusing to obey orders to stop kicking. (SOF ¶ 23). At the disciplinary hearing on these misconducts, the Hearing Examiner found Plaintiff guilty and he received an additional seven (7)

day razor restriction.[2]  (SOF ¶¶ 24-25).

On the day of the incident, Inmate Robinson encouraged Plaintiff to file a lawsuit regarding the events that occurred.  (SOF ¶¶ 26-27).  However, Inmate Robinson also convinced Plaintiff not to file a grievance regarding the alleged excessive use of force as he believed Plaintiff could exhaust his administrative remedies by challenging the misconducts issued by the Officers.  (SOF ¶ 41).

Plaintiff is familiar with the Grievance Policy and had access to the prison grievance system.  (SOF ¶¶ 35-36).  Around the same time as the incident at issue, Plaintiff filed four (4) unrelated grievances.  (SOF ¶ 36).  Plaintiff never filed a grievance complaining that Defendant Smith harassed him; he never filed a grievance complaining that Defendant Smith denied him a razor; and, he never filed a grievance complaining that Defendants Smith and Anstead used excessive force against him.  (SOF ¶¶ 38-40).

## IV.    DISCUSSION

### A.    Rule 41(b)

Rule 41(b) of the Federal Rules of Civil Procedure allows a court to dismiss an action for a plaintiff's failure to comply with procedural rules or orders of the

---

[2] This Court notes that the Hearing Examiner also sanctioned Plaintiff to time in disciplinary custody on these charges.  *See* (Doc. 48, Exs. B, C, Disciplinary Hearing Reports).

court.  *See* FED. R. CIV. P. 41(b); *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629

(1962); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 341 (3d Cir. 1982).

In deciding whether to dismiss a case pursuant to Rule 41(b), the court must

consider the factors identified in *Poulis v. State Farm Fire and Casualty Co.*, 747

F.2d 863 (3d Cir. 1984).  The six (6) factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice
> to the adversary; (3) history of dilatoriness; (4) whether the conduct
> of the party was willful or in bad faith; (5) the effectiveness of
> sanctions; and (6) the meritoriousness of the claim or defense.

*Id.* at 868.  Not all of the *Poulis* factors need be satisfied to dismiss a complaint.

*See Shahin v. Delaware*, 345 Fed. Appx. 815, 817 (3d Cir. 2009) (citing *Mindek v.

Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

Here, Plaintiff is *pro se* and is solely responsible for not filing an opposition

brief or responsive statement of material facts.  *See Colon v. Karnes*, 2012 U.S.

Dist. LEXIS 14692, *7 (M.D. Pa. 2012) ("Plaintiff is proceeding *pro se*, and thus

is responsible for his own actions.").

Second, Defendants are prejudiced by Plaintiff's inaction because they

"cannot defend an action that Plaintiffs do not pursue."  *See Taliaferro v. Darby

Twp. Zoning Bd.*, 2008 U.S. Dist. LEXIS 55695, *7 (E.D. Pa. 2008) (dismissing

the complaint pursuant to Rule 41(b)).

Third, Plaintiff has a history of dilatoriness.  The instant motion for summary judgment was filed nearly five (5) months ago.  This Court entered an Order, (doc. 52), directing Plaintiff to respond, however he has still failed to file an opposition brief or a responsive statement of material facts and he never filed a motion for an extension of time.  *See Murray v. Stickman*, 2006 U.S. Dist. LEXIS 11027, *8 (W.D. Pa. 2006) (the third *Poulis* factor was satisfied because the plaintiff had ignored numerous orders and deadlines despite being given multiple extensions of time).  Additionally, a motion to dismiss was previously filed by Hearing Examiner Reisinger, to which Plaintiff did not respond, despite being ordered to do so.  (Docs. 14, 20).

Fourth, during the time period that Plaintiff's response to Defendants' motion for summary judgment was due, Plaintiff has filed a motion to appoint counsel and exhibits.  (Docs. 49, 50).  This Court therefore finds that Plaintiff's decision not to file a brief in opposition to Defendants' motion for summary judgment or a responsive statement of material facts is willful.  *See Crouse v. W. Leb. Twp.*, 2006 U.S. Dist. LEXIS 25972, *4 (M.D. Pa. 2006) (concluding, "plaintiff's failure to comply with the order of court directing him to file responses to the pending motions and advising that inaction may result in dismissal of the complaint ... constitutes willful disregard of the court's authority").

9

Fifth, because Plaintiff is indigent, this Court finds that alternative, monetary, sanctions would not be effective. *See Dennis v. Feeney*, 2012 U.S. Dist. LEXIS 7328, *5 (M.D. Pa. 2012) (finding, "monetary sanctions are unlikely to be efficacious given that Plaintiff is indigent"); *Shilala v. SCI Albion*, 2012 U.S. Dist. LEXIS 95887, *7 (W.D. Pa. 2012) ("Alternative sanctions, such as monetary penalties, are inappropriate with indigent parties.").

Lastly, this Court previously determined that Plaintiff failed to respond to, and failed to prosecute, Hearing Examiner Reisinger's motion to dismiss, and that his claims would fail on the merits. (Doc. 33).  Similarly, it is unlikely that Plaintiff's claims will succeed regarding the remaining Defendants as he failed to exhaust administrative remedies. *See Pozoic v. Cumberland County Prison*, 2012 U.S. Dist. LEXIS 4202, *9 (M.D. Pa. 2012) (in analyzing the sixth *Poulis* factor, this Court stated that it could not find that the complaint would be successful on the merits because the plaintiff failed to exhaust administrative remedies before bringing his claim.  The complaint was dismissed pursuant to Rule 41(b)), *citing Smith v. Pa. Dep't of Corr.*, 2011 U.S. Dist. LEXIS 113542, *28 (W.D. Pa. 2011) ("Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies.").

Consequently, the *Poulis* factors weigh heavily in favor of dismissing

10

Plaintiff's complaint for failure to prosecute.  Regardless, this Court also finds that Plaintiff failed to exhaust administrative remedies and accordingly will grant Defendants' motion for summary judgment on that basis.  Moreover, Plaintiff's claims are unlikely to succeed even if administrative remedies had been exhausted.

**B.    Exhaustion**

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended 42 U.S.C. § 1997e, requires prisoners to present their claims through an administrative grievance process before seeking redress in federal court.  The Act specifically provides, "[n]o action shall be brought with respect to prison conditions under ... 42 U.S.C. 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  An inmate must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or of the relief sought.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power of ... any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).  Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant. *Ray v. Kertes*,

285 F.3d 287, 295 (3d Cir. 2002) (reasoning that "[p]rison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners").  Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 Fed. Appx. 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal court.") (emphasis added).  A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *McKinney v. Kelchner*, 2007 U.S. Dist. LEXIS 71958, *8 (M.D. Pa. 2007) (citing *Spruill*, 372 F.3d at 227-32; *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000)).

There are three different grievance or administrative remedy processes available to an inmate to challenge every aspect of confinement.  *See* (http://www.cor.state.pa.us, DOC Policies).  Namely, the Inmate Grievance Policy, DC-ADM 804; the Inmate Discipline Policy, DC-ADM 801; and the Administrative Custody policy, DC-ADM 802.  *Id.*; *see also* (Doc. 48, Ex. E,

12

DC-ADM 804). "The three programs are each designed to address specific issues which may arise within the prison. One administrative remedy may not be substituted for another." *Fortune v. Bitner*, 2006 WL 2796158, at *7 (M.D. Pa. 2006).

The Department's Administrative Directive entitled "Inmate Grievance System," DC-ADM 804, provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration. *See* (http://www.cor.state.pa.us, DOC Policies, DC-ADM 804). *See also* (Doc. 48, Ex. E, Grievance Policy, DC-ADM 804). After informal attempts to resolve the problem with staff, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review. (*Id.*). The grievance must be submitted within fifteen (15) working days of the incident at issue. (*Id.*). All grievances, whether timely or not, are assigned a tracking number, which is stamped on the front of the form, and the inmate is provided with a copy of the stamped grievance. (*Id.*). The Grievance Coordinator will render a decision within a short time. (*Id.*). If relief is denied, the inmate may appeal the decision to the Superintendent of the institution. (*Id.*). Upon completion of the initial review, and the appeal to the Superintendent, an inmate may seek final review with the Secretary's Office of Inmate Grievances

and Appeals.  (*Id.*).

A grievance "***directly related to a specific inmate misconduct charge or a***
***specific disciplinary sanction and/ or the reasons for placement in***
***administrative custody*** will not be addressed through the Inmate Grievance
process and must be addressed through Department policy DC-ADM 801, 'Inmate
Discipline' and/or DC-ADM 802, 'Administrative Custody Procedures.'"  *See*
(http://www.cor.state.pa.us, DOC Policies, DC-ADM 804) (emphasis in original);
*see also* (Doc. 48, Ex. E, Grievance Policy).  The DC-ADM 801 process provides
that the initial misconduct is heard by a Hearing Examiner, if the violation is
determined to require formal resolution.  *See* (http://www.cor.state.pa.us, DOC
Policies, DC-ADM 801).  An appeal from the Hearing Examiner's decision can be
made to the Program Review Committee ("PRC") within fifteen (15) days of the
hearing; an appeal from the PRC decision to the Superintendent, within seven (7)
days of the PRC decision; and the final appeal to the Chief Hearing Examiner, *i.e.*,
Final Review, within seven (7) days of the decision of the Superintendent.  (*Id.*).

Plaintiff was charged with the following misconducts on December 22,
2011.

### 1.    *Misconduct Report No. B336940*

This misconduct charged Plaintiff with assault and refusing to obey an

14

order.  (Doc. 48, Ex. B, Misconduct Report).  The incident report, which was

written by Defendant Smith, indicates that at 3:10 p.m. on December 22, 2011, the

following conduct occurred:

> On above date and time while assisting medical in obtaining a weight
> on inmate Busey FY8740 he attempted to kick me.  After the
> attempted assault the inmate was placed on the floor to gain control of
> the situation.  While inmate Busey was being placed on the floor he
> was attempting to spit on this officer.  I gave several orders to the
> inmate to stop kicking and stop spitting at the officers.  All orders
> were refused initially and he complied at his leisure.  The inmate was
> placed in shackles and returned to his cell with no further incident.

*Id.*

Plaintiff's disciplinary hearing was held on December 29, 2011 before

Hearing Examiner Reisinger.  (Doc. 48, Ex. B, Disciplinary Hearing Report).

Hearing Examiner Reisinger found the following:

> Inmate Busey pleads not guilty to charges #1, # 35.  Inmate Busey
> states he never kicked or spit on anyone.  HEX interviewed inmate
> Borrero, who stated that "It was on!"  Inmate Borrero stated that
> Busey was kicking at the Officers, but claims he never saw Busey spit
> on anyone.
> Hearing continued on 12/29/11 @ 1115.
> HEX believes Officer Smith's written report and inmate Borrero's testimony
> over inmate Busey's denial, that Busey did assault Officer Smith by
> attempting to kick Officer Smith and refusing several orders to stop kicking.
> Any attempt to commit the action is the same as if the action had been
> completed.  A preponderance of evidence exists to support charges #1, #35.

(Doc. 48, Ex. B, Disciplinary Hearing Report).  The Hearing Examiner sanctioned

Plaintiff to ninety (90) days in disciplinary custody on each charge, for a total of one hundred eighty (180) days in disciplinary custody.  *Id.*

### 2.    *Misconduct Report No. B336943*

This misconduct also charged Plaintiff with assault and refusing to obey an order.  (Doc. 19, Ex. C, Misconduct Report).  The incident report, written by Defendant Anstead, indicates that at 3:10 p.m. on December 22, 2011, the following occurred:

> On the above date time while bringing inmate Busey FY8740 out of his cell to obtain a weight he attempted to kick Officer Smith.  Inmate was then placed on the floor.  While being placed on the floor inmate was kicking and struck this Officer on the right side of my ribs.  I gave inmate several orders to stop kicking at Officers.  All orders were refused and inmate was placed in leg irons and returned to his cell with no further incident.

*Id.*

Hearing Examiner Reisinger found the following with respect to Misconduct Report No. B336943:

> Inmate Busey pleads not guilty to charges #1, # 35.  Inmate Busey states he never kicked or spit on the Officers.  On 12/27/11 this HEX interviewed inmate Borrero who stated that "It was on!"  Borrero went on to state that he saw inmate Busey kicking at the Officers, but claims he never saw Busey spit on anyone.
> Hearing continued on 12/29/11 @ 1120.
> HEX believes Officer Anstead's written report and inmate Borrero's testimony is more credible than inmate Busey's denial, that Busey did assault Officer Anstead by kicking him in the right side of his ribs.  Busey

16

refused several orders to stop kicking.  A preponderance of evidence exists to support charges #1, #35.

(Doc. 48, Ex. C, Disciplinary Hearing Report).  The Hearing Examiner sanctioned Plaintiff to ninety (90) days in disciplinary custody on charge #1, and ninety (90) days in disciplinary custody on charge #35 concurrent to the time imposed in Misconduct No. B336940.  *Id.*

Plaintiff appealed the Hearing Examiner's decisions on both misconducts to the Program Review Committee.  *See* (Doc. 1, Misconduct Hearing Appeals).  The PRC sustained the Hearing Examiner's decisions.  (*Id.*).  Plaintiff then appealed the PRC decisions to the Superintendent, who sustained the PRC's decisions and denied his appeals.  (*Id.*).  Plaintiff filed final appeals to the Chief Hearing Examiner, who upheld the decisions of the PRC and the Superintendent, and denied his appeals.  (*Id.*).

As is evidenced above, Plaintiff fully utilized DC-ADM 801, which provides for the appeals process through which an inmate can appeal a hearing where he is found guilty of misconduct.  However, Plaintiff could not use this avenue to exhaust his instant claims against Defendants Smith and Anstead. *See Africa v. Dukes*, 2012 WL 1313412 (M.D. Pa. 2012) (Rambo, J.) (inmate's grievance did not involve a specific inmate misconduct or disciplinary sanction or

placement in administrative custody, thus DC-ADM 801 was not the proper method for challenging constitutional violations unrelated to misconduct proceedings).  Plaintiff's misconduct appeals dealt solely with the misconduct hearings and the Hearing Examiner's decisions. *See* (Doc. 1, Misconduct Hearing Appeals).  Plaintiff was required to use DC-ADM 804 to file grievances regarding his allegations against Defendants Smith and Anstead as they are not confined to complaints about the misconducts he received or the procedures at his disciplinary hearing.  Plaintiff failed to do so.

Ian Taggert, Acting Grievance Coordinator at SCI-Camp Hill, declared under penalty of perjury that a review of the Department records confirmed that Plaintiff never filed a grievance complaining that Defendant Smith harassed him, he never filed a grievance complaining that Defendant Smith denied him a razor, and he never filed a grievance complaining that Defendants Smith and Anstead used excessive force on him.  (Doc. 48, Ex. H, Declaration of Ian Taggert, ¶¶ 8, 10-12).

Plaintiff admittedly did not grieve his allegations against Defendants Smith and Anstead.  (SOF ¶ 41).  At his deposition, Plaintiff specifically testified that he did not file a grievance about Defendant Smith allegedly harassing him and he did not file a grievance about the alleged use of excessive force by Defendants Smith

18

and Anstead.  (Doc. 48, Ex. A, Deposition of Plaintiff, pp. 14-16, 41-42).  Plaintiff

did not state that he was prevented from using the grievance system.  Rather, he

testified that he is familiar with the grievance policy, as is evidenced by his filing

of grievances on other matters.  (*Id.* at pp. 41-42; Doc. 48, Ex. H, Declaration of

Ian Taggert, ¶ 9).  Plaintiff believed he could exhaust his administrative remedies

by appealing the misconducts issued by Defendants Smith and Anstead.  (SOF ¶

41; Doc. 48, Ex. A, Deposition of Plaintiff, pp. 42-43).  However, as stated, DC-

ADM 801 is not the proper method for challenging constitutional violations

unrelated to misconduct hearings.

     Plaintiff's failure to pursue the appropriate administrative process with

respect to his claims precludes the litigation of such claims.  Accordingly, Plaintiff

failed to properly exhaust his administrative remedies before filing this action and

Defendants are entitled to summary judgment.  *See Cosgrove v. Cappachella*, 325

Fed. Appx. 52 (3d Cir. 2009) (complaint was properly dismissed for failure to

exhaust administrative remedies where the inmate stated that there was a grievance

system, he voluntarily did not use it, and did not allege that he was prevented from

using the grievance system).  However, even if Plaintiff had exhausted his

administrative remedies, for the reasons that follow, he has failed to submit any

evidence showing that there is a genuine issue for trial as to any of his claims.

### C.     Excessive Force Claim

"The use of excessive force against prisoners may constitute cruel and

unusual punishment in violation of the Eighth Amendment." *Moultrie v. Luzerne*

*County Prison*, 2008 U.S. Dist. LEXIS 87008, *13 (M.D. Pa. 2008) (citing

*Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).  "The Eighth Amendment prohibits

prison officials from unnecessarily and wantonly inflicting pain in a manner that

offends contemporary standards of decency." *Tompkins v. County of Lackawanna*,

2013 U.S. Dist. LEXIS 20823, *10-13 (M.D. Pa. 2013) (citing *Hudson*, 503 U.S.

at 8).  "[W]henever prison officials stand accused of using excessive physical

force in violation of the Cruel and Unusual Punishments Clause, the core judicial

inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 6-7 (discussing *Whitley v. Albers*, 475 U.S. 312 (1986)).  "It

is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited by the Cruel and Unusual Punishments

Clause." *Whitley*, 475 U.S. at 319.

To determine whether a correctional officer has used excessive force in

violation of the Eighth Amendment, the courts consider several factors, including:

(1) the need for the application of force; (2) the relationship between

the need and the amount of force that was used; (3) the extent of
injury inflicted; (4) the extent of the threat to the safety of staff and
inmates, as reasonably perceived by responsible officials on the basis
of the facts known to them; and (5) any efforts made to temper the
severity of a forceful response.

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at

321).  "[A] showing of 'significant' or 'serious' injury is not necessary to make an

Eighth Amendment claim."  *Id.* at 107 (quoting *Hudson*, 503 U.S. at 8).  Courts

"must assess the degree of force employed in relation to the apparent need for it...

[and] *de minimis* force may, in extreme instances, violate the Eighth Amendment."

*Id.*

The undisputed facts of this case establish that Defendants reasonably

perceived a threat to the safety of prison staff and attempted to avoid the use of

force by initially ordering Plaintiff to stop kicking.  *See Young v. Coleman*, 2012

U.S. Dist. LEXIS 84777, *31-32 (W.D. Pa. 2012) (granting summary judgment in

favor of the defendant on the plaintiff's use of excessive force claim because the

defendant perceived the plaintiff to be a threat as he was yelling, thrashing his

hands around, disobeying orders, and physically resisting; because the situation

could have easily escalated into something much more serious; and because the

other officers tried to temper the severity of their response by giving repeated

verbal commands that the plaintiff ignored).  Plaintiff even admitted that he could

understand why the Officers would perceive a threat of harm.  *See* (SOF ¶¶ 20-22;

Doc. 48, Ex. A, Deposition of Plaintiff, p. 52).  Defendants contend that Plaintiff

attempted to kick Defendant Smith, he refused to comply with their orders to stop

kicking, and the minimum amount of force was used to subdue Plaintiff to ensure

he would not assault them.  (Doc. 46, p. 14).

    Plaintiff has failed to submit any evidence to contradict the record, which

establishes that in light of his attempt to kick Defendant Smith, force was applied

in good-faith to subdue him.  Consequently, even if Plaintiff had exhausted this

claim, Defendants would be entitled to summary judgment on Plaintiff's excessive

force claim.

### D.    Retaliation Claim

    A cause of action for retaliation requires a plaintiff to prove that: (1) the

conduct leading to the alleged retaliation was constitutionally protected; (2) he

suffered an adverse action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights; and (3) his protected conduct was a substantial

or motivating factor in the decision to discipline him.  *Rauser v. Horn*, 241 F.3d

330, 333 (3d Cir. 2001).  Importantly, a "prisoner's ability to file grievances and

lawsuits against prison officials is a protected activity for purposes of a retaliation

claim."  *Wicker v. Shannon*, 2010 U.S. Dist. LEXIS 99777, *19-20 (M.D. Pa.

2010) (dismissing due process claim and all but one retaliation claim), *citing Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981).  To satisfy the second *Rauser* requirement, the prisoner must demonstrate "that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Rauser*, 241 F.3d at 333 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  To show a causal link, a prisoner must prove "that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333.  He must establish: "(1) an unusually suggestive proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." *DeFranco v. Wolfe*, 387 Fed. Appx. 147, 154 (3d Cir. 2010).  If neither is proven, the prisoner "must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*  Because many prisoners allege retaliation "when confronted with disciplinary action, district courts must view prisoners' retaliations claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." *Sims v. Dragovich*, 1999 U.S. Dist. LEXIS 8374, *9-10 (E.D. Pa. 1999).

"Once the initial showing is made by the prisoner, the burden then shifts to the prison official to prove that the same decision would have been made absent

the protected conduct for reasons reasonably related to a legitimate penological

interest." *DeFranco*, 387 Fed. Appx. at 154-55 (citing *Rauser*, 241 F.3d at 334).

The "courts should afford deference to decisions made by prison officials."

*Rauser*, 241 F.3d at 334.

Plaintiff essentially alleges three (3) retaliation claims, which will be

addressed in turn.

### 1.   *Denial of Razor*

Plaintiff alleges that Defendant Smith denied his request for a razor on

December 22, 2011 in retaliation for a complaint Plaintiff made against him.

(Doc.1 ¶¶ 8-9; Doc. 48, Ex. A, Deposition of Plaintiff, p. 14).   The first prong of

*Rauser is* met as Plaintiff's complaint against Defendant Smith to the PRC is

constitutionally protected conduct.   However, Plaintiff failed to meet the second

prong of *Rauser* because he has not demonstrated that he suffered an adverse

action at the hands of prison officials.   *See Fantone v. Herbik*, 528 Fed. Appx.

123, 127 (3d Cir. 2013) (inmate's allegation that he was not provided with a razor

for forty-six (46) days was insufficient to state a claim under the Eighth

Amendment); *Fortune v. Hamberger*, 379 Fed. Appx. 116, 122 (3d Cir. 2010)

(inmate failed to set forth facts that the alleged denial of adequate showers and

hygienic materials while housed in the RHU was sufficiently serious to deprive

him of the "minimal civilized measure of life's necessities") (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Even if Plaintiff had established that he suffered an adverse action, he would not meet prong three of *Rauser*.  Plaintiff's complaints to the PRC were two (2) months prior to the incident in December 2011.  *See* (Doc. 48, Ex. A, Deposition of Plaintiff, p. 14).  *See also DeFranco v. Wolfe*, 387 Fed. Appx. 147 (3d Cir. 2010) (denying the inmate cell transfer retaliation claim, stating that two months temporal proximity is insufficient).  Considering the timing, Plaintiff would not be able to establish a causal link between the purported adverse action and his complaint.

### 2.   *Alleged Retaliatory Acts by Defendants Smith and Anstead*

Plaintiff alleges that the misconducts issued by Defendants Smith and Anstead were retaliatory.  (Doc. ¶ 15).  However, Plaintiff does not state that they were the result of any protected conduct, therefore he has not met the first prong of *Rauser*.  Defendants nevertheless argue that summary judgment should be granted on this claim as Plaintiff was ultimately found guilty of the misconducts.  (Doc. 46, pp. 20-21).  As stated, the Hearing Examiner found Plaintiff guilty of the misconducts issued against him, and the decisions were upheld on all levels of review.  Thus, even if Plaintiff had met the requirements of *Rauser*, Defendants likely would have met their burden to prove that Defendants would have issued

25

the misconduct charges.  *See Solomon v. Walsh*, 2012 U.S. Dist. LEXIS 136812,

*28 (M.D. Pa. 2012) (the defendant need only show "that there is 'some evidence'

to support the discipline citation" to defeat an inmate's retaliation claim) (quoting

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)), *adopted by*, 2012 U.S. Dist.

LEXIS 136814 (M.D. Pa. 2012); *Grantham v. Trempus*, 2010 U.S. Dist. LEXIS

118776, *16 (W.D. Pa. 2010) ("the finding of guilt of the underlying misconduct

charge satisfies a defendant's burden of showing that he would have brought the

misconduct charge even if plaintiff had not filed a grievance.").

### 3.    *Retaliatory Use of Force*

Plaintiff alleges that Defendants used excessive force against him in

retaliation for his complaint against Defendant Smith.  (Doc. 1 ¶¶ 13-14, 24-25,

27).  The first prong of *Rauser is* met as Plaintiff's complaint against Defendant

Smith is constitutionally protected conduct.  Second, Plaintiff alleged that he

suffered pain and an injury to his right knee.  (Doc. 1 ¶ 25).  Thus, he could

establish that suffered an adverse action that would deter a prisoner of ordinary

firmness from exercising his constitutional rights.  As to the third prong of *Rauser*,

Plaintiff's complaint about Defendant Smith was two (2) months prior to the

incident in December 2011, thus he has not presented any evidence that his

complaint against Defendant Smith was a substantial or motivating factor

underlying the purported use of force by Defendants.

Even if Plaintiff had met the requirements of *Rauser*, Defendants likely would have met their burden to prove that they would have used the same amount of force to subdue Plaintiff.  Defendants contend that their use of force was a good faith response to Plaintiff's attempted kick and they would have made the same decision absent the protected conduct.  (Doc. 46, p. 21).  It was established at the misconduct hearings that Plaintiff was guilty of assault and refusing to obey orders.  *See* (Doc. 48, Exs. B, C, Disciplinary Hearing Reports).  This Court therefore agrees that the force applied by the Officers was a good-faith response to control Plaintiff after his attempted kick.  Plaintiff has failed to submit any evidence to contradict the record.

Consequently, Plaintiff failed to allege sufficient facts to set forth a retaliation claim and Defendants would be entitled to summary judgment on this claim.

## V.   CONCLUSION

Despite being ordered to respond to Defendants' motion for summary judgment, Plaintiff failed to respond.  Defendants' motion is therefore deemed unopposed.

Rule 41(b) of the Federal Rules of Civil Procedure allows a court to dismiss

an action for a plaintiff's failure to comply with procedural rules or orders of the

court.  This Court specifically directed Plaintiff to file a brief in opposition to

Defendants' motion for summary judgment and a responsive statement of material

facts, but he failed to comply.  All of the *Poulis* factors weigh in favor of

dismissing Plaintiff's complaint for failure to prosecute.  However, out of an

abundance of caution, this Court has considered Defendants' exhaustion argument

and addressed the merits.  In so doing we have concluded that the motion for

summary judgment should be granted.  An appropriate Order follows.